# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VONZELL SCOTT, SR., <br><br> Plaintiff, <br><br> v. <br><br> WENDY'S PROPERTIES, LLC, a corporation, <br><br> Defendant. | Case No.: 20 cv 6829 <br><br> District Judge: Manish Shah <br><br> Magistrate Judge: Maria Valdez |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS RONALD HAURI

Defendant Wendy's Properties, LLC, through its counsel, Keefe, Campbell, Biery & Associates, LLC, moves to bar Plaintiff's Expert Ronald Hauri under Federal Rule of Evidence 702 as his opinions are guesswork. Hauri's opinions connect to the existing record only via his *ipse dixit*. Hauri's opinions also do nothing to aid the future trier of fact. Simply put, they are improper. In further support, Wendy's states:

### INTRODUCTION AND BACKGROUND

On December 31, 2018, two unidentified gunmen targeted and shot Plaintiff and his passenger, Kelly Mitchell. This occurred while they were in the drive through line of the Wendy's at 242 West Garfield Boulevard, Chicago, Illinois. The inside of the Wendy's closes at 10:00PM, while the drive through lane remains open until it closes in the morning hours. There is undisputed video footage of the attempted homicides. And this unforeseeable attack took mere seconds. **Exhibit A**, Video Footage from Security Cameras.

As the gunmen are purportedly unknown, Plaintiff sued Wendy's claiming it violated its duty of care. **Exhibit B**, Plaintiff's Amended Complaint at Law, ¶¶ 7-8 (December 23, 2020). In order to have a viable case to present to a jury, Plaintiff must demonstrate that his attempted murder was reasonably foreseeably to Wendy's. But given the available undisputed video footage of this targeted shooting, Plaintiff's case is not viable. Undeterred by logic and reason, Plaintiff presents Ronald Hauri to create a red herring to dangle in front of the Court. The real effort is to distract from Plaintiff's insurmountable burden.

Specifically, Plaintiff instructed Hauri to review the case to find liability against Wendy's. Hauri allegedly reviewed the CPD Supplementary Accident Report, CPD 2018 Annual Report, CAP Index Report, OEMC Calls for Service Report, Plaintiff's Amended Complaint and Defendants' Answers and Affirmative Defenses, Plaintiff's Rule 26 Initial Disclosures and Answers to Defendants' Interrogatories and Requests to Produce, Defendants' Rule 26 Initial and Supplemental Disclosures and Initial and Supplemental Answers to Plaintiff's Interrogatories and Requests to Produce, various deposition transcripts (not all of them), and the surveillance video of the occurrence at Wendy's on the morning of December 31, 2018, and also participated in a site visit to the Wendy's. **Exhibit C**, Hauri's Rule 26 Report. The video footage shows this targeted shooting. **Ex. A**. Two unidentified gunmen stalked and rapidly executed a targeted attack on Plaintiff's car. *Id.* And this attack appeared to be tactical and executed to kill Plaintiff and his passenger. *Id.* It was not a robbery; not a drive through dispute. The video footage shows the shooters' SUV stalking Plaintiff's car. *Id.* It further shows these shooters execute a rapid attack on Plaintiff and his passenger. *Id.* Yet Hauri and Plaintiff blame Wendy's for the tragic attempted murder. Plaintiff's theory of liability is illogical and fallacious. It also does not comport with the applicable law. Importantly, Hauri identifies no prior similar shooting at the Wendy's.

Hauri presents a logical fallacy that if a security guard was present, then this targeted shooting would have been prevented. What methodology does he use to opine that? What reasoning does he use other than his own *ipse dixit*? Would a security guard prevent Plaintiff's attempted homicide?

And Plaintiff also uses Hauri to opine that the shooting was reasonably foreseeable, but there is no adequate methodology or reasoning to that opinion. It is pure speculation and not supported in facts or law. Thus, the Court should bar his testimony.

**OPINIONS AND RELIED UPON FACTS**

Hauri's opinions were identified within his Federal Rule of Civil Procedure 26 disclosure and during his deposition. **Ex. B** and **Ex. D**. The crux of his opinions were that the criminal activity that resulted in Plaintiff's injuries was reasonably foreseeable to Wendy's, that Wendy's failed to use reasonable care and follow the standards and established security practices to prevent the criminal activity that resulted in Plaintiff's injuries, that the burden to use reasonable care and follow the applicable security standards and established practices to prevent the criminal activity would have been minimal for Wendy's, and that Wendy's failure to use reasonable care and follow the applicable security standards and established practices and was a proximate cause of the injuries suffered by Plaintiff. **Ex. D**, 136.

He also concludes that Wendy's should have performed a "risk assessment." *Id.*, 77-78. He said there are three primary elements to this assessment: 1) location; 2) history; and 3) operations. *Id.* Initially he discussed location. *Id.*, 78-85. He opined that the Wendy's was in a high-risk environment. *Id.*, 140-142. This was despite that fact that he identified no prior similar shootings at the Wendy's. *Id.*, 78-81. He based the location opinion on a CAP Index Report and OEMC Report. *Id.*, 139-157. A CAP Index Report uses a zone of 1-6 miles and looks at the criminal

history of a potentially six mile radius. *Id.* Hauri—without adequate methodology or reasoning—simply opines these reports provide him with the bases to say that the targeted attempted homicide was reasonably foreseeable. *Id.* However, he could identify no prior shootings at the Wendy's location. *Id.* He went on to discuss an OEMC Report, but he also indicated this report never identified a similar prior incident at the Wendy's. *Id.* With his information, he opined that the location was high risk.

Next, he looked at the Wendy's history. He mostly based this on the OEMC report. *Id.*, 132-145. Yet again, he could identify no historical similar incidents at the Wendy's. *Id.*, 131:2-10, 143:18-144:1. So he had no factual support indicating that the history of the Wendy's called for what he termed as a "risk assessment."

He examined the operation of what he called the quick server restaurant (a/k/a QSR). The QSR was Wendy's as it is a fast-food location. *Id.*, 86-94. He indicated QSRs like Wendy's are not as problematic as establishments that have dancing and serve alcohol. *Id.* He also indicated that closing the dining room during the overnight drive through hours were reasonable. *Id.*, 89.

Ultimately, he opined that a risk assessment should have been completed and that the shooting was reasonably foreseeable. He says that had Wendy's performed the risk assessment and supplied security guards it would have stopped this attempted homicide. *Id.*, 136.

He also opined that criminal attack prevention provides no guarantees. *Id.*, 11:11-14:1. He said there are no guarantees that prevention will be 100% perfect. *Id.* He said not every criminal act is preventable. *Id.* He said not every attempted homicide is preventable. *Id.* He said homicides that demonstrate targeted, or combat style targeted issues are a lot more difficult than other criminal acts to prevent. *Id.*

While attempting to define "reasonable foreseeability," Hauri said you should take steps that are reasonable, and he is not expecting someone to "create Fort Knox." *Id.*, 79:9-83:10. He said a restaurant need not be protected by the military or police officers. *Id.* He said that would be unduly burdensome on a restaurant. *Id.* He said that a restaurant does not have to deter something that it not reasonably foreseeable. *Id.,* 108:24-109:3. He then illogically opined that a restaurant has a duty under the law to deter a criminal act or action if that criminal act or action is not reasonably foreseeable under the law to the restaurant. *Id.,* 112:11-17. He believes he can opine on the legal standard: "reasonable foreseeability." *Id.*, 163:4-11.

He said he could not guarantee whether Wendy's could have prevented this attempted homicide attack. *Id.*, 78:13-79:8. Yet he opined one security guard would have been a deterrent. *Id.*, 105:15-106:6. He found no similar attacks at this Wendy's in his research. *Id.*, 131:2-10.

He described his reasoning and methodology as based on his experience and education, and reviewing the materials, he came to these conclusions and opinions. *Id.*, 133:5-8. He said he based his conclusion of Wendy's having "reasonable foreseeability" of this attempted murder based on his "training, experience, and education." *Id.*, 144-145:9. He said he has seen crimes transition from miles down the road to a location from the CAP Index Scores. *Id.* That is not adequate methodology.

Overall, Hauri's opinions lack factual basis and were not formulated using sufficient data or reliable methods. Furthermore, Hauri's purported reasoning for his opinions is illogical and demonstrates that he clearly disregarded the data that was provided, solely using pure speculation to formulate his conclusions. Lastly, his opinions will not aid a trier of fact as they are purely speculative and engage in conjecture. The Court should act as the gatekeeper and slam the gate shut on Hauri's unreliable opinions and conclusions.

**ARGUMENT**

I.      **HAURI'S OPINIONS FAIL UNDER RULE 702**

Hauri's procured opinions lack any factual support and were formulated on pure speculation. In other words, they are mere guesswork. And they will not help the jury. Rather, had Hauri formulated his opinions based on adequate facts and data and used logical reasoning to form such opinions, then his testimony could be reliable. However, Hauri did not use sufficient facts and data to formulate his opinions. Hauri's opinions are the product of unreliable principles and methods.

The Supreme Court poured the foundation for the framework for evaluating expert testimony in *Daubert*. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011); *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006) ("The admissibility of expert testimony is governed by Federal Rule of Evidence 702 as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*"). "The district court is a 'gate-keeper' who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999); *Daubert*, 509 U.S. 579, 589 (1993).

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d)

the expert has reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011).

"The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

"Under Federal Rule of Evidence 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Illinois Cent. R.R.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). District judges possess considerable discretion in dealing with expert testimony. *See Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–43 (1997) (holding that abuse of discretion standard applies in reviewing district court rulings on admissibility of proposed Rule 702 opinion testimony).

Here, Hauri's purported opinions are unreliable, unsupported, and lack adequate reasoning. Indeed, Hauri's opinions were formulated on pure speculation, rather than any sufficient facts or data. They also fail to assist the trier of fact. Ultimately, the Court should bar Hauri from testifying.

    *a. **Hauri's opinions do not have adequate factual support.***

Hauri fails to adequately support his opinions with research and adequate facts. He was asked at his deposition whether he performed any analysis, statistics, or other assessment of the

crime in the immediate area of Wendy's. His response was no. **Ex. D**, 131-32. The only actual information related to crime statistics in the area were the CAP index report and the OEMC. *Id.* Yet he conceded that he was unaware of any prior similar shootings at the Wendy's. Without adequate information to support his opinions, he cannot even give his "he said it himself" opinions he is attempting to give.

Hauri's testimony must be based on sufficient facts and data. Fed. R. Evid. 702 (West 2022). Here it is not. Instead, his testimony is merely based on speculation where he attempts to say the information he was provided was inadequate. That is not Wendy's fault. He should have requested additional information to opine if he did not have enough. Logic goes that if he does not have adequate data, then he cannot opine. Yet he says he can. This allegation calls his claimed opinions into question. He also testified that it was unnecessary to conduct any of his own independent research of prior criminal history at the Wendy's prior to rendering his opinions. *Id.,* 131-32. That is inadequate and an affront to the Court, the potential jury, and both parties. Hauri engaged in a logical fallacy that if he says it, then it must be.

Hauri said he relied upon incomplete data from a CAP Index Report. Yet he indicated that he knew no prior attempted homicides at the Wendy's. This is the data and information he would need to search for. Given that he is an alleged expert in premises security, he knows what available sources he must determine information related to prior criminal history at an exact location. Yet he ignores that information. Why? Because it is likely inadequate to support his speculative opinions. Hauri goes not to state that Wendy's was in a high-risk environment. How does he opine that? He bases it off the CAP Index Report. That report is from a snapshot of a radius of six miles in one of the largest American municipalities. Hauri's disdain for the facts and information is deplorable. Why did he not do more research? Why did he not find more factual support for his

haphazard opinions? That is not for Wendy's to demonstrate. That is Plaintiff's burden. *See Lewis.*, 561 F.3d at 705. Hence, the Court should find that Hauri's opinions are not supported by adequate facts.

### b. *Hauri's opinions are ipse dixit.*

Hauri engaged in guesswork here. He merely attempts to distract the Court from the central issue in this case: "reasonable foreseeability." He wants the Court and any future trier of fact to take his word for it. Yet he does so without reason. Experts explain complicated facts to juries and judges. They assist the trier of fact. They are also meant to provide logical methodology and reasoning to form their opinions. They are not entitled to simply assert their illogical and unreliable opinions. Hauri's reasoning gap is too attenuated here.

The Court is the gatekeeper, and "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). A district court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

However, as the Supreme Court has recognized, "conclusions and methodology are not entirely distinct from one another," and while "[t]rained experts commonly extrapolate from existing data[,] ... nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (citation omitted). Expert testimony cannot rest on "because I said so." *Wilda v. JLG Indus., Inc.*, 16-CV-10088, 2021 WL 392705 at *2-4 (N.D. Ill. Feb. 3, 2021).

In short, it is "critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). When that link is missing, a court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.*, 522 U.S. at 146.

Here, Hauri supplies no link from the information he had to his illogical opinions. The standard is whether this attempted homicide was "reasonably foreseeable" under applicable law. One of the major issues the Court should look at is whether there is prior history of similar incidents. *See Witcher v. 1104 Madison St. Restaurant*, 2019 IL App (1st) 181641. But Hauri indicated there was no prior history of similar incidents. **Ex. D**, 78-81. He did not have a reasonable method of concluding there was "reasonable foreseeability" with no further data or reasoning. His opinions were not reasoned. There is a huge analytical gap between the data he had and the opinions he is offering.

A district court also must exclude "'subjective belief or unsupported speculation' by considering 'whether the testimony has been subjected to the scientific method.'" *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) (quoting *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997)); *see also Smith v. Union Pac. R.R.*, 2017 WL 2656583, at *5 (N.D. Ill. 2017) ("[A]n expert must substantiate his opinion, and not simply provide the ultimate conclusion without analysis."). Experts must show their work—they cannot simply offer raw conclusions. *Wilda v. JLG Indus., Inc.*, 16-CV-10088, 2021 WL 392705, at *2–4.

In support of his conclusion that the criminal activity that resulted in Plaintiff's injuries on December 31, 2018 was reasonably foreseeable to Wendy's, Hauri testified that the crux of that conclusion was based upon his opinion that Wendy's knew their environment was of high risk

nature. **Ex. D**, 139-140. In support thereof, Hauri testified that he primarily relied upon the CAP Index Report provided to him and the deposition transcripts of the Wendy's employees, of Rocco Prate. *Id.*, 137, 140-144.

In analyzing the CAP Index Report, Hauri described his review of data referencing the risk profile of the geographical area within a three-mile radius and a six-mile radius of the Wendy's location. *Id.*, 142-145, 157. However, the data was not specific to the Wendy's, but was rather a generalized characterization of a geographical location extending as far as six miles away from the Wendy's in any given direction. *Id.*, 142-145, 157. While one would believe it to be more reasonable to consider data of past criminal activity specific to the location, Hauri apparently did not.

Hauri testified that based upon his experience, CAP Index Reports generally contain additional statistical data, including, but not limited to, maps of specific geographical locations referring to the frequency of past criminal activity. *Id.*, 144-147. Hauri's primary reliance on the CAP Index Report in formulating his opinion that the criminal activity that resulted in Plaintiff's injuries was reasonably foreseeable to Wendy's was illogical and more likely to be viewed as unreasonable.

Hauri testified, he also considered the deposition transcripts of the Wendy's employees, and primarily, the deposition transcript of Rocco Prate. *Id.*, 137. Specifically, Hauri referenced Prate's testimony pertaining to his assertion he believed that Wendy's was in a high-risk environment. *Id.*, 137-140. However, Hauri also states there were no prior shootings in the years before this attack. *Id.*, 64-65.

Hauri also testified that he considered the testimony of another employee who referenced fearing gun hold-ups at the Wendy's restaurant while on their shifts supporting his conclusion that

the Wendy's restaurant knew or should have known of the high-risk environment. *Id.*, 90. Likewise, however, Hauri's reliance and consideration on this employee's testimony is illogical since Hauri admitted there was no evidence or other factual data to indicate that any similar attempted murgers had occurred at the Wendy's restaurant in past years. *Id.*, 89.

Rather, absent factual data to support Hauri's efforts to find liability against Wendy's, Hauri appears to grasp at straws to bolster his opinions, which are pure speculation.

Last, Hauri also testified that he reviewed the OEMC Report referencing the calls for services to the CPD Police Department made by the Wendy's restaurant over the past three years. *Id.*, 62-63. However, he conceded there are no calls for service in that report that reference any past criminal activity like the incident. *Id.*, 64. Specifically, Hauri admitted there are no calls for service for any shootings or homicide attempts. *Id.*

Without reason, Hauri then illogically concluded the criminal activity that resulted in the Plaintiff's injuries was reasonably foreseeable to Wendy's, despite there being no prior history of any similar criminal activity in the past three years. As Hauri conceded during his deposition, he analyzed no other information pertaining to criminal history at that specific Wendy's location in formulating his opinions. *Id.*, 131.

Overall, Hauri did not rely on sufficient facts or data in formulating his opinions, and Hauri's opinions should be deemed unreliable. Thus, the Court should find that Hauri's opinions lack adequate factual support rendering them guesswork.

Hauri's testimony will not aid the trier of fact since his opinions are unreliable. Hauri's opinions were formulated on pure speculation and with no reliable method, and his opinions should be barred under *Daubert's* gate-keeping requirements. *Kumho Tire Co., Ltd.*, 526 U.S. at 151-2. Accordingly, the Court should bar Hauri from testifying.

Hauri's testimony furthered describe in great detail the purely hypothetical scenario that Hauri dreamed up that had an armed security guard been on duty and on the premises of the Wendy's restaurant on the night of December 31, 2018 when the shooting occurred. **Ex. D,** 94-100. Specifically, Hauri's testimony describes his speculations that had a security guard been present, the security guard could have intervened in the criminal attack, possibly deterring the shooting from occurring. *Id.*, 94-100. Hauri then conceded that an inapposite scenario was possible to occur, including a situation wherein the offenders turned their attention to the security guard, engaging in a shootout. *Id.*, 94-100.

Considering Hauri's failure to provide any reliable methods used to formulate his conclusions and the lack of sufficient factual data analyzed in support thereof, the Court should bar his speculative opinions without any logical or reliable reasoning consistent with *Daubert* and its progeny.

Likewise, Hauri's opinion that Wendy's failure to use reasonable care and following the security industry standards and established security practices was a proximate cause of Plaintiff's injuries is without an adequate factual basis. Rather, during his deposition, Hauri ultimately admitted that he could not opine to a reasonable certainty that the shooting attack that occurred on December 31, 2018 would or could have been prevented by the mere presence of a security guard, *Id.*, 104-106.

By logic, Hauri's admission indicates that even had a security guard been present, the criminal activity may not have been prevented. Furthermore, Hauri conceded that a security guard on that night could have resulted in a shootout between the security guard and the offenders, which would have created a very dangerous environment, possibly resulting in more injuries sustained by the Plaintiff and/or other customers. Overall, Hauri's opinions were not derived from logic and

reasoning wherein factual data was analyzed and sufficient reliable methods were utilized, and therefore, the Court should bar his opinions.

Some ipse dixit opinions are merely subjective assertions impermeable to challenge and incapable of repetition by anyone other than the professed expert. See, e.g., *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) ("Asked repeatedly during his deposition what methods he had used to generate projections, [expert] repeatedly answered 'my expertise' or some variant ('my industry expertise', '[my] awareness,' and 'my curriculum vitae')—which is to say that he either had no method or could not describe one."). Others are simply bare conclusions with "no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). In all cases, the "gap between the data and the opinion proffered" is connected only by the expert's say-so, making it insurmountable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Even if eminently qualified, experts cannot offer opinions based solely on their say-so (what lawyers call *ipse dixit*). *See Kumho Tire*, 526 U.S. at 157, 119 S.Ct. 1167; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Expert testimony must be based on sufficient and known facts. Fed R. Evid. 703; *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786; *see*, *e.g.*, *Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (evidence of one sale was an insufficient basis to calculate an average of sales over twenty years); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (excluding expert testimony because the "mere existence of a temporal relationship" was an unreliable basis to show a causal relationship between medication and symptoms).

Like the above cases, Hauri described his reasoning and methodology as based on his experience and education, and reviewing the materials, he came to these conclusions and opinions.

**Ex. D**., 133:5-8. He said he based his conclusion of Wendy's having "reasonable foreseeability" of this attempted murder based on his "training, experience, and education." *Id.*, 144-145:9. He said he has seen crimes transition from miles down the road to a center location. *Id.* Hauri's reasoning and methodology call into question the very opinions he attempts to give. He is attempting to assert opinions based on his own say-so. Consequently, the Court should bar Hauri's illogical opinions as they are guesswork and will not assist the jury.

## CONCLUSION

The Court should bar Hauri's opinions under Rule 702. His opinions are illogical and lack adequate factual support. Hauri's conclusions were not derived using any reasoning or reliable methods. And his unreliable opinions will not aid the trier of fact. Accordingly, the Court should grant this motion and bar Hauri from testifying.

WHEREFORE, the Defendant prays the Honorable Court grant this motion and bar Ronald Hauri from testifying. Defendant also prays for any further relief the Court deems appropriate.

/s/ Bradley J. Smith

Bradley J. Smith
Keefe, Campbell, Biery & Associates, LLC
118 N. Clinton Street, Suite 300
Chicago, IL 60661
(312) 756-1800
Email: bsmith@keefe-law.com
ARDC No. 6304031