20 I 201

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vonzell Scott, Sr. ) | |
| ) | |
| Plaintiff ) | |
| ) | Court No.: 20-cv-6829 |
| v. ) | Judge Manish S. Shah |
| ) | |
| Wendy's Properties, LLC, a corporation and Metro ) | |
| Loss Prevention Services Group (Guard Division), ) | |
| Inc., a corporation ) | |
| ) | |
| Defendants ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO BAR RONALD HAURI

Plaintiff Vonzell Scott, Sr., by his attorneys Muldoon & Muldoon, LLC, in response to Judge Manish's questions regarding defendant Wendy's Properties, LLC's *Motion to Bar Plaintiff's Expert Witness*, states:

### INTRODUCTION

On and before December 31, 2018, defendant Wendy's Properties, LLC ("Wendy's") owned and operated a quick serve restaurant on Garfield Boulevard near the Dan Ryan Expressway, Chicago, Illinois, that served customers from 8:00 am to 4:00am.

The security measures for the safety of its customers and employees Wendy's utilized in an attempt to deter criminal activity were inadequate, including but not limited to, its utilization of armed security guards.

Wendy's had changed from an "unarmed" security service to and armed security service and increased the hours of the armed security service within a year prior to the occurrence.

1

However, pursuant to Wendy's policy, the security guard service had been hired to provide an armed guard in the restaurant and parking lot/drive-through area only from 9:00 am to 10:30 pm. Consequently, there was no armed security guard service during the overnight shift of 10:30 pm to 4:00 am.

At approximately 3:00 am on December 31, 2018, a vehicle apparently entered the Wendy's parking lot through a back alley, and exited the lot through a back exit, onto Princeton Avenue, out of sight of any of the employees in the restaurant. Not long afterward, two males entered the parking lot from an open area in the back of the parking lot.

The two males approached the second car in line (from the pick-up window) from behind. The two males were not visible to any employees inside the restaurant and would have been unidentifiable to anyone watching the security camera monitor (however the employees were not watching parking lot activity).

The two males armed with handguns stood on either side of the second car in line, unseen and unidentifiable by anybody inside the restaurant, and began firing handguns into the vehicle.

Unfortunately, plaintiff Vonzell Scott and his friend Kelly Mitchell were in the second car in line and were struck multiple times by the gunfire. The shooters fired at least sixteen rounds at and into the vehicle, turned and ran back onto Princeton Avenue, unseen and unidentifiable by any employees in the restaurant.

Plaintiff has disclosed Ronald Hauri, an experienced, certified security expert with over 40 years of experience in the security field (Exhibit A, Hauri cv). Plaintiff's Rule 26 (a)(2)(B) report listed all the materials Mr. Hauri reviewed and relied upon in formulating his opinions, including but not limited to: Chicago Police Department OEMC Calls for Service; CPD 2018 Annual Report; depositions of current and former employees of defendant; defendant's security

2

protocols and procedures; and national security standards and professional literature to compare to defendant's security practices. He also made a site visit. (Exhibit B, Plaintiff's Rule 26 (a)(2)(B) report)

Mr. Hauri is prepared to testify that, based on his review of all the relevant material, the applicable accepted security standards and established practices, and his experience, knowledge and training, that the criminal attack on a Wendy's customer was reasonably foreseeable to Wendy's, that Wendy's failed to use reasonable care and follow the applicable security standards and established practices, the burden to use reasonable care and follow the applicable security standards and established practices would have been minimal and that Wendy's failure to follow the applicable security standards and established practices was a proximate cause of Plaintiff's injuries.

## DEFENDANT'S MOTION

Defendant Wendy's has filed a motion asking this court to bar Mr. Hauri from testifying. Unfortunately, Defendant's motion is riddled with inaccurate descriptions of the evidence, mis-interpretations of the law, loaded terminology ("targeted"/"tactical" attack), personal insults directed at the attorney for the plaintiff ("Plaintiff instructed Hauri to review the case and find liability against Wendy's"), as well as unusual and uncalled-for vitriol directed toward Mr. Hauri (a gentleman who does not deserve such derision) thoughout what should have been limited to a legal argument.

This Court has directed Plaintiff to respond to direct questions posed in its May 9, 2022 Order, and therefore the focus of this response will be on the questions posed by this Court.

3

Plaintiff does not concede the accuracy of any of Defendant's interpretation of the facts or the legitimacy of any of its legal arguments, and does not waive any of his objections to Defendant's motion by limiting his response to this Court's questions.

## APPLICABLE LAW

Under Rule 702, an expert may be deemed qualified by experience as well as knowledge, skill, training or education." Fed.R.Evid. 702. This is a liberal standard; the expert need only have some specialized knowledge that would assist the trier of fact. Expert witness testimony need not be scientific (natural scientific or social scientific) in character. The principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science. In short, anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness. An expert's testimony is not unreliable simply because it is founded on his experience rather than on data. See also *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020) (district court erred by excluding expert opinion that drew significantly on expertise to add context and supporting information)
*In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill. 2022)

One methodology employed by a security expert approved by the 7th Circuit involved : reviewing witness statements, including testimony of the defendant's former director of security; visiting and inspecting the defendant's facility; generally reviewing various security protocols of the defendant's; reviewing published statistics and police reports involving crime in the area of defendant's facility; comparing defendant's practices with those recommended by the national standards; and reviewing professional literature on applicable security issues
*Lees v Carthage College* 714 F3d. 516 (7th District, 2013)

Security expert testimony may not be evaluated on the *Daubert* factors, rather, if the proposed expert principally relies on experience and knowledge, a court must satisfy itself that the expert's experience and knowledge are sufficient to form the bases for the opinions…
It is by no means controversial for a security expert to opine that patrols by security guards deter crime by increasing the chance of detection and apprehension, and any argument that the opinion is speculative can be dealt with on cross-examination, not by baring the opinion. *Padgett v Kmart Corp*, (S.D. Ga. 2016)

"Reasonable foreseeability" depends on the general character of the event or harm, and not on the *precise nature or manner of the occurrence*. A plaintiff need not show the exact method by which the injury occurred could have been expected, rather it is sufficient if some resulting injury could have been reasonably foreseen. Foreseeability does not require that a defendant have notice of a prior, similar event.
*Dixon v Caesars Entertainment Corp.* N.D. 2022) Emphasis added.

## JUDGE'S QUESTIONS

**1. Whether Hauri's Report and Deposition Adequately Describe a Methodology Used to Assess Security Practices? Whether that Methodology is an Accepted One?**

In his report, Mr. Hauri listed all materials he reviewed, including but not limited to local crime statistics, Wendy's internal documents, deposition testimony of the defendant's director of security, deposition testimony of both current and prior employees of defendant, including complaints of lack of adequate security, industry-related literature and standards, etc. On page 2 of his report, he sets out his methodology – the review and analysis of all of the information, directing his attention to the history and operation of the restaurant, and the reasonableness of its practices and procedures as they related to its security program. (Exhibit B, p. 2)

At his deposition, Mr. Hauri was asked questions regarding his methodology regarding assessing security practices and determining what criminal acts were reasonably foreseeable. Mr. Hauri answered that he conducted a risk assessment, reviewing and considering: the location (environment) of the premises: the operation (nature) of the business; and the history (crime demographics) of the restaurant and surrounding area. (Exhibit C, Plaintiff's deposition, pp 77-78)

Throughout his report and his deposition testimony, Mr. Hauri continually referred to and relied upon accepted security standards and established practices, such as *The Protection of Assets*, the *ANSI/ASIS/RIMS RA 1-2015* and websites dedicated to security professionals. These standards and guidelines are accepted and relied upon by other experts in the security field. (Exhibit C, p. 133-135.)

The *Protection of Assets* is a six-volume collection of security standards and reference materials published by ASIS, the largest membership organization for security management professionals and an ANSI-accredited Standards Developing Organization. The *ANSI/ASIS/RIMS RA 1-2015* is an over 100-page national risk assessment standard. Relevant excerpts from the ASIS and other accepted security literature include:

## XI. Information Sources for Determining Loss Risk Events

1. Local police crime statistics
2. Uniform Crime Reports (UCR) or comparable data
3. Organization internal documents (e.g., security incident reports)
4. Prior complaints from employees, customers, guests, visitors, etc.
5. Prior civil claims for inadequate security
6. Intelligence from local, state, or national law enforcement agencies about potential threats
7. Industry-related information about trends
8. General economic conditions of the area
9. Presence of a crime magnet (e.g., proximity of a popular night club, continuous presence of vagrants, property in disrepair)

*ASIS – General Security Risks*

Crime Risk Factors

There are three primary crime risk factors that should be considered when designing a security plan for a business open to the public.

1. Nature of the premises.
2. Crime Demographics.
3. Location.

Chris E McGoey www.crimedoctor.com

*CHAPTER SEVEN*

**Evaluation of Security**

The civil courts in most jurisdictions have placed a legal duty of care on landowners and business operators to provide *adequate* security to protect invitees from being injured by foreseeable crime. Developing a security plan is an efficient way to prevent foreseeable crime. Effective security planning will address foreseeable crime based on the nature of the premises, crime history, and the location of the business. A comprehensive security plan will use a combination of proven solutions to prevent or deter crime.

Chris E McGoey www.crimedoctor.com

6

> When selecting a methodology, it is important to understand the reliability and confidence levels of the available data, particularly estimates of likelihood and consequences. There is no single methodology that is appropriate for measuring the likelihood and consequences of various risks. Each methodology requires independent judgment regarding its design. In some cases, it may not even be possible, or necessary, to explicitly determine likelihood and consequence. As a general rule, simple methodologies are less prone to errors and are easier for stakeholders to understand, as well as more likely to fulfill the principles of transparency and practicality. The methodology that best meets the decision-maker's needs is generally the best choice, whether quantitative or qualitative.

ANSI/ASIS/RIMS RA 1-2015 Section 5.5.2

While there is more than one acceptable method to assess security practices, it is clear that the methodology utilized by Mr. Hauri – reviewing the evidence regarding the history (OEMC Calls for service, testimony of current and former employees regarding prior criminal activity in and around the premises, etc.), location (corner lot, close proximity to an expressway, high-crime risk neighborhood, etc.) and operation of the business (quick serve restaurant, open until 4:00 am, armed guards patrolling the inside and outside of the premises from 9:00 am to 10:30 pm, employees to wear headphones when taking out the garbage at night in case of attack in parking, etc.) and then analyzing the information through the prism of his experience (over 40 years in the security field), knowledge (proficiency regarding the applicable security standards and established practices, member of several ASIS committees – Exhibit B, p 5, etc.) and training (he is a Certified Protection Professional, which requires 20 hours of continuing education every three years – Exhibit C, p 58-59, etc.) is an accepted methodology. The methodology utilized by Mr. Hauri is very similar to the methodology previously approved by the 7th Circuit. See *Lees v Carthage College* 714 F3d. 516 (7th District, 2013)

## 2. Whether the Report and Testimony Explain Why Reports of General Criminal Activity Are Appropriate to Use When Assessing the Foreseeability of the Specific Criminal Activity at Issue in this Case?

In Mr. Hauri's report, he lists several bases for his opinion that the criminal activity that caused the plaintiff's was reasonable foreseeable, including but not limited to: CAP Index

7

classified area as the highest crime risk; CPD calls for service reports indicated there had been significant criminal activity at that location; and suspicious and criminal activity on the premises had been reported to management by employees in an effort to have the armed guard service extended a few hours into the overnight shift. (Exhibit B, p. 4). These are not the only bases for the opinion – the rest are set out in the report.

While Mr. Hauri's report does not specifically spell out an explanation as to why reports of general criminal activity are appropriate to use when assessing the foreseeability of the specific criminal activity at issue in this case, the criminal history, prior complaints by employees and police statistics of a location are accepted factors to consider when assessing security practices. (See the answer to Question #1 above).

While Mr. Hauri was answering a question at his deposition regarding the relationship between the high-risk environment of the restaurant and the specific criminal activity at issue in this case, he was cut-off mid-sentence by the attorney for Wendy's and the subject was not revisited. (Exhibit C, p 140, line 21-p.141 line 3)

The evidence of prior general criminal activity is sufficient to establish the foreseeability of the specific criminal activity at issue in this case. As held previously by this Court:

> "Reasonable foreseeability" depends on the general character of the event or harm, and not on the *precise nature or manner of the occurrence*. A plaintiff need not show the exact method by which the injury occurred could have been expected, rather it is sufficient if some resulting injury could have been reasonably foreseen. Foreseeability does not require that a defendant have notice of a prior, similar event.
> *Dixon v Caesars Entertainment Corp.* N.D. 2022) Emphasis added.

**3. Whether the Report and Testimony Adequately Explain How Risk Assessment (deposition page 78:312) is an Accepted Method of Reporting the Reasonable Foreseeability of Events?**

Mr. Hauri wrote in his report and testified at his deposition that in order to determine what was reasonably foreseeable, that is, what one would know or should know – what one

8

should reasonably expect - he would analyze the location/environment of the facility, analyze the history (including the criminal history) of the business and analyze the operations of the restaurant. (Exhibit B, p.4 and 5, Exhibit C, p. 77, 78 and 160). As outlined above, his methodology is accepted by experts in the security field.

The primary purpose of the risk assessment is to determine what events are reasonably foreseeable. There really is no other reason for the assessment. As Mr. Hauri succinctly put it, the very reason to conduct a proper risk assessment is "So you collect information to make an assessment as to what could happen there" (Exhibit C, p. 78 line 11-12).

**4. Whether Incomplete Information (e.g., about the historical criminal activity or lighting conditions) Permits a Conclusion About Foreseeability Using an Accepted Methodology?**

As set forth in the in the accepted standards and security literature cited above, there are a host of factors than can be reviewed and analyzed when conducting a risk assessment to determine the foreseeability of events. As stated in ANSI/ASIS/RIMS RA 1-2015 Section 5.5.2, cited above, there is no one set method to conduct a risk assessment. The assessor must review and analyze the information available.

The weaknesses, if any, caused by incomplete information regarding the lighting conditions, or perceived incomplete information regarding the historical criminal activity (Mr. Hauri does not express any concerns regarding either) can be dealt with on cross-examination.

**5. Whether Any Data Supports the Expert's Opinion About the Deterrent Effect of Security Measures? Whether Any Methodology Allows for an Opinion about Deterrent Effect and Causation?**

In his report, Mr. Hauri opines that he agrees with Rocco Prate, defendant Wendy's Corporate Security Manager and one of its former General Managers, Thelma Mack, that the physical presence of an armed guard can deter criminal activity . He also opined that the physical presence of an armed guard patrolling the drive-through lane near the pick-up window would have served as a deterrent to the gunmen from approaching and shooting into Plaintiff's vehicle (Exhibit B, p. 7) It is a generally accepted principle in the field of security that armed security guards can deter crime.

"It is by no means controversial for a security expert to opine that patrols by security guards deter crime by increasing the chance of detection and apprehension," *Padgett v Kmart Corp,* (S.D. Ga. 2016)

The *ASIS Protection of Assets,* cited by Mr. Hauri (Exhibit B, p. 7, Exhibit C, p. 49, 133) sets forth one accepted authority:

Chapter 3 - Crime Prevention Through Environmental Design

## Physical Protection System Function, Deterrence
Theft, sabotage, and other malevolent acts at a facility may be prevented by deterring the adversary or by defeating the adversary. Deterrence is achieved through measures that potential adversaries perceive as too difficult to defeat; it makes the facility an unattractive target so the adversary abandons or never attempts an attack. Examples of deterrents are security officers in parking lots, adequate lighting at night, signs, and barriers, such as bars on windows.

ASIS Protection of Assets 2012

**6. The Expert Suggests His Opinion is Equivalent to Saying Two Plus Two Equals Four (deposition page 156:89). If So, Why is His Testimony Helpful to the Jury?**

Starting on page 155 and continuing on to page 156 of his deposition transcript, the attorney for defendant Wendy's asked Mr. Hauri a series of five questions in a row without the opportunity to answer (Exhibit C p 155-156). When finally allowed, Mr. Hauri responded, "Well, when I think it through – when I read and look at the evidence – that's reasoning. When Wendy's is informed that they're operating in a high-risk environment and they don't take reasonable steps to mitigate those risks, that's much like two plus two equals four. And that's the reasoning that goes into it. There's just a lot of information here in terms of bases and the activities by Wendy's in regards to their security program that don't add up when you look at the standards and established practices" (Exhibit C, p. 156).

Mr. Hauri's testimony would be helpful to the jury to: go through "the evidence" that he is referring to; explain a "high-risk environment" in security terms; explain what "reasonable steps" Wendy's should have taken from a security perspective; explain what it means to "mitigate those risks" as they apply to the security issues in this case; and explain to the jury, from a security expert's point of view, why Wendy's activities in regards to their security program "don't add up when you look at the standards and established practices".

10

### 7. If the Jury is Told that Wendy's Relied on the CAP Report, What Expertise is Required to Infer that Wendy's Should Have Anticipated the Underlying Event Here?

Mr. Hauri has opined that defendant Wendy's failed to use reasonable care because it failed to conduct an adequate security survey by a competent professional - the only "risk assessment" it conducted was receiving an incomplete CAP Index report.

It is Mr. Hauri's professional opinion that to only rely on an incomplete CAP Index for an assessment of risk of foreseeable events is failure to use reasonable care, because while the CAP Index can be used as one tool for an assessment, it does not constitute an entire assessment (Exhibit C, p. 142, 156-157). It is Mr. Hauri's opinion, backed up by the accepted standards and established practices, that in order to conduct an adequate security assessment, one should review and analyze: the location (environment) of the premises: the operation (nature) of the business; and the history (crime demographics) (Exhibit C, p. 77-78).

Therefore, Mr. Hauri's testimony will assist the jury when deciding whether or not defendant Wendy's was negligent when it limited its risk assessment to the review of an incomplete CAP Index.

## CONCLUSION

It is clear that Mr. Hauri is an experienced, qualified security expert who relied upon accepted methods of assessment and analysis to arrive at his conclusions and opinions regarding the foreseeability of the criminal activity that injured plaintiff, the failure to use reasonable care on the part of defendant Wendy's, the minimal burden it would have placed on defendant Wendy's to use reasonable care, and that defendant Wendy's failure to use reasonable care was a proximate cause of the injuries to the plaintiff.

Mr. Hauri's expert testimony will inform the jury as to: why a proper security assessment is important; how a proper security assessment should be conducted; what a properly conducted security survey would have revealed regarding what should have reasonably been expected by defendant Wendy's; what security measures were available and reasonable in light of what the assessment would have revealed to defendant Wendy's; how reasonable security measures can deter criminal activity, such as the criminal activity that is the subject of the present case; how the failure to use reasonable care by defendant Wendy's in the present case was one of the

proximate causes of the plaintiff's injuries; and much more information that is beyond the knowledge of an average juror.

Based upon all of the above, plaintiff Vonzell Scott respectfully asks this court to deny defendant Wendy's *Motion to Bar Plaintiff's Expert Witness Ronald Hauri*.

/s/ *signature*
Muldoon & Muldoon, LLC

Michael K. Muldoon
Muldoon & Muldoon, LLC
111 West Washington Street
Suite 1500
Chicago, Illinois 60602
312/739-3550
6192616
mkm@muldoonlaw.com

**CERTIFICATE OF SERVICE**

I, Michael K. Muldoon, on oath, state that this Certificate of Service and the foregoing *Plaintiff's Response to Defendant's Motion to Bar Plaintiff's Expert Witness* were delivered via email on May 25, 2022, before the hour of 5:00 PM to the parties listed in the below Service List.

**SERVICE LIST**
*Vonzell Scott, Sr., v. Wendy's Properties, LLC*
*Federal Court Case No. 20 cv 6829*

Bradley J. Smith
Attorney for Defendant Wendy's Properties, LLC
Keefe, Campbell, Biery & Associates, LLC
118 N. Clinton Street, Suite 300
Chicago, IL 60661
(P): 312-756-1800
Email: bsmith@keefe-law.com

/s/ *signature*
Michael K. Muldoon

Michael K. Muldoon
Muldoon & Muldoon, LLC
111 West Washington Street
Suite 1500
Chicago, Illinois 60602
312/739-3550
6192616
mkm@muldoonlaw.com