S. Ronald Hauri
Certified Protection Professional
872 S. Milwaukee Avenue #201
Libertyville, IL 60046
(312) 282-6689

REPORT IN THE MATTER OF:

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**VONZELL SCOTT, SR.,**

Plaintiff,

v.  Case No.: 20 cv 6829

**WENDY'S PROPERTIES, LLC, a corporation, and
METRO LOSS PREVENTION SERVICES GROUP (GUARD DIVISION), INC., a corporation,**

---

MR. RONALD HAURI'S PRELIMINARY EXPERT REPORT
February 28, 2022

---



PLAINTIFF'S EXHIBIT B

I have been asked to review the circumstances regarding the shooting of J.V. Scott and Kelly L. Mitchell that took place on 31DEC18 at the Wendy's Restaurant located at 242 West Garfield Boulevard, Chicago, Illinois. I have over 40 years of education, experience, and training in matters of law enforcement, security, and protective services as set forth in my attached CV. My fees are $295/hour for all general work and $395/hour for testimony at deposition or trial.

My opinions in this preliminary report are based on the information currently available to me. The forthcoming opinions expressed in this report are held to a reasonable degree of professional certainty and are based on my review of the materials including reports and other discovery materials, as well as my education, training, and experience in the field of premises security.

The methodology applied to formulating my opinions is based on the review and analysis of the information provided in order to determine the history of the operation of the Wendy's Restaurant (Store 1461) and the reasonableness of its practices and procedures as it related to operation of the restaurant and its security program on the night in question.

I have reviewed the following materials:

CPD Supplemental Report;
OEMC Calls For Service;
CPD 2018 Annual Report;
Amended Complaint at Law;
Wendy's Answer to Amended Complaint and Affirmative Defenses; and
Metro's Answer to Amended Complaint and Affirmative Defenses.

Plaintiff's Rule 26 initial Disclosures;
Plaintiff's Answers to Defendant Wendy's Interrogatories;
Plaintiff's Response to Defendant Wendy's Request to Produce;
Plaintiff's Answers To Defendant Metro's Interrogatories; and
Plaintiff's Response to Defendant Metro's Request to Produce.

Defendant Wendy's Rule 26 initial Disclosures;
Defendant Wendy's First Supplemental Rule 26 Disclosures;
Defendant Wendy's Second Supplemental Rule 26 Disclosures;
Defendant Wendy's Answers to Plaintiff's Interrogatories;
Defendant Wendy's Response to Plaintiff's Request to Produce;
Defendant Wendy's Response to Plaintiff's Request to produce – Documents;
Defendant Wendy's Supplemental Answers to Plaintiff's Interrogatories;
Defendant Wendy's First Supplemental Response to Plaintiff's Request to Produce; and
Defendant Wendy's Response to Plaintiff's Supplemental Request to Produce.
Defendant Wendy's Response to Plaintiff's 3rd Supplemental Request to Produce

Deposition Transcripts including Exhibits of:
Vonzell Scott
Kelly Mitchell
Nonjae Thompson
Thelma Mack
Ramah Clinkscales
Rocco Prate

Defendant Metro's Rule 26 Initial Disclosures;
Defendant Metro's Answers to Plaintiff's Interrogatories;
Defendant Metro's Response to Plaintiff's Request to Produce;

Video produced by Wendy's regarding the morning of the occurrence.
Site visit to 242 W. Garfield

## INTRODUCTION

On December 31, 2018, at approximately 3:00 am, plaintiff Vonzell Scott and his friend Kelly Mitchell drove to the restaurant owned and operated by defendant Wendy's Properties, LLC ("Wendy's") on Garfield Boulevard near the Dan Ryan Expressway, where Mr. Scott joined the drive-through line queue to place his order.

The Wendy's restaurant was equipped with several security measures for the safety of its customers and employees.

However, pursuant to Wendy's policy, the security guard service had been hired to provide an armed guard only from 9:00 am to 10:30 pm. Consequently, there was no security guard service during the overnight shift of 10:30pm to 4:00am during the restaurant's operating hours.

While Plaintiff was in line, another vehicle apparently entered the Wendy's parking lot through a back alley, out of the sight of anyone in the restaurant and Plaintiff. That other vehicle then exited the lot through a back exit, onto Princeton Avenue. Not long afterward, two males entered the parking lot from an open area in the back of the parking lot.

The two males approached the second car in line (from the pick-up window) from behind. The two males were not visible to anyone inside the restaurant and would have been unidentifiable to anyone watching the security camera monitor (however the employees were not watching parking lot activity).

The two males armed with handguns stood on either side of the second car in line, unseen and unidentifiable by anybody inside the restaurant, and began firing handguns into the vehicle.

Plaintiff and Ms. Mitchell were in the second car in line and were struck multiple times by the gunfire. The shooters fired at least 16 rounds at and into the vehicle, turned and ran back onto Princeton Avenue, unseen and unidentifiable by anyone in the restaurant.

Chicago Police responded to the scene, EMS arrived and transported the victims to hospital for treatment of their gunshot wounds.

The police investigation indicated that the offenders arrived at the restaurant by traveling west across the Dan Ryan Expressway to South Wells Street, turning north on South Wells in wrong way traffic lanes to and alley where they turned west and traversed the Wendy's parking lot and drive-through lane to Princeton Avenue where they turned north and parked north of the alley before walking onto the Wendy's property and approaching Plaintiff's vehicle where they commenced shooting into Plaintiff's vehicle.

The Police investigation has not identified the offenders or developed a motive for the shooting[1].

Based upon my analysis of the documents listed above, the applicable security standards and established practices, and my education, experience, knowledge, and training, I have concluded that the criminal activity that resulted in Plaintiff's injuries was reasonably foreseeable to Wendy's; that Wendy's failed to use reasonable care and follow the applicable standards and established security practices to prevent the criminal activity that resulted in Plaintiff's injuries; that the burden to use reasonable care and follow the applicable security standards and established practices to prevent the criminal activity would have been minimal for Wendy's; and that Wendy's failure to use reasonable care and follow the applicable security standards and established practices and was a proximate cause of the injuries suffered by plaintiff.

The bases for the opinion that the criminal activity was reasonably foreseeable to Wendy's includes:

- Prior to the occurrence, Wendy's knew or should have known that the location of the restaurant was in a high crime risk neighborhood in that: 1) the CAP Index report, relied upon by Wendy's, classified the area as the highest level (3) of crime risk; 2) the Chicago Police Department Calls for Service reports indicated that there had been significant prior police activity at the location; and 3) suspicious and criminal activity on the premises and in the neighborhood had been reported to management by employees in an effort to have the armed guard service extended a few hours into the overnight shift.
- Prior to the occurrence, Wendy's knew or should have known that the subject restaurant's proximity to the expressway and major roadways, along with its hours of operation, made it susceptible to criminal activity on its premises[2].
- This Wendy's restaurant was equipped with: 1) an armored safe; 2) an intrusion alarm system; 3) robbery/panic alarm buttons at the cash registers, walk-in cooler and freezer; 4) video surveillance system that provided different views of the interior and exterior of the premises; 5) an armed guard service to patrol the premises, both inside and outside, during the hours of 9:00AM to 10:30PM.
- It was a security policy to have the back door locked at all times and to supply employees who had to perform work duties outside with a headset in case of he/she was attacked.
- Wendy's promulgated a procedure for the shift manager to monitor the parking lot cameras for suspicious activity.
- In 2018, Wendy's replaced the previous unarmed security guard service with a security service that provided armed guards.

---

[1] Chicago Police Department Case Supplementary Report ID:13127345, pp. 7-8
[2] Protection of Assets, Physical Security ASIS 2012; p.45

- Wendy's knew that the overnight operation was high risk and therefore closed the dining room and operated drive-up service in order to reduce the potential for an adverse event in the dining room[3].
- There was suspicious activity in the parking lot/drive-through area a short time prior to the occurrence.

The bases for the opinion that Wendy's failed to use reasonable care and follow applicable security standards and established practices to protect Plaintiff and other customers from the reasonably foreseeable criminal activity include:

- Wendy's failed to have a security survey conducted by a competent professional to assess its security needs[4].
- Wendy's failed to conduct a complete and properly documented security assessment report[5]. Mr. Prate testified that the "risk assessment" was the CAP Index report citing crime reports[6].
- Wendy's failed to implement proper procedures to record, report and document criminal activity on its premises.
- Wendy's Corporate Security Manager Rocco Prate failed to provide any reports, data, studies, etc., other than perhaps a limited version of the CAPS Index "report" to the Wendy's employee(s) with the responsibility to decide whether or not to extend the armed guard(s) service at the subject restaurant into the overnight shift.
- Wendy's failed to implement and enforce a workable policy and procedure to ensure that the security camera video display units were effectively monitored by an employee during the overnight shift, due to the fact that the staff was too busy to do so[7].
- Wendy's failed to implement an adequate program to train its employees as to the proper procedures to follow in the event of suspicious activity or an impending criminal attack on its premises.
- The shift manager was not trained by Wendy's to look for or respond to suspicious activity in the drive-through lane or parking lot[8].
- Wendy's failed to use reasonable care when it came to staffing an armed security service when it knew or should have known an armed guard/guards was necessary for the protection of its customers during overnight operations presenting the highest risk of crime[9].
- Wendy's failed to extend the hours of the armed security guard service to provide reasonable protection to its late-night customers when it knew or should have known that

---

[3] Deposition, Rocco Prate; pp.37
[4] ANSI/ASIS/RIMS RA.1-2015; 5.5.3, p.29
[5] Deposition, Rocco Prate; p. 26, 34, 80-82, 99
[6] Deposition, Rocco Prate; p.23-24
[7] Deposition; Nonjae Thompson; pp.27
[8] Deposition; Nonjae Thompson, p.10
[9] Deposition, Rocco Prate; p. 37

an armed guard was necessary to protect its late-night customers, employees, and Plaintiff from a reasonably foreseeable criminal activity[10].
- Mr. Prate testified that Wendy's occasionally closed the dining room early at stores they considered to be high risk operations[11].

The bases for the opinion that the burden to protect Plaintiff from the reasonably foreseeable criminal activity was minimal include:

- Wendy's knew it needed to retain a security company to provide armed security guards at its premises during certain high-risk periods.
- Before and at the time of the occurrence, Wendy's had a contractual relationship with an experienced, competent security guard company.
- In 2018, Wendy's expanded the hours of its armed security guard service to deal with homeless men and women who sought shelter from the cold Chicago winter mornings by having the guards start at 9:00AM, rather than the previously 12:30PM start time.
- Also in 2018, Wendy's expanded its armed guard service to end at 10:30PM, rather than the previous 10:00PM end time.
- The restaurant closed its dining room at 10:00PM and was open for drive-through service only from 10:00PM until 3:00AM, with restaurant cleaning taking place after closing and employees leaving the restaurant at 4:00AM.
- The armed guard service stopped at 10:30PM. Expanding the armed guard service from 10:30PM to 4:00AM represented only 5 ½ hours of additional coverage during the highest crime risk[12].
- The additional cost of keeping its customers and employees safe would just be one factor to be considered by Wendy's when deciding the hours of operation of the store.

The bases for the opinion that Wendy's failure to use reasonable care and follow the applicable security industry standards and established security practices was a proximate cause of Plaintiff's injuries include;

- A security survey conducted by a qualified professional would have revealed the need for an armed security presence that was competent and qualified to handle suspicious activity and imminent criminal attacks against customers on the overnight shift[13].
- Had Wendy's management listened to and heeded the concerns of its employees regarding the need for the armed security guard service to be extended a few hours, to cover the overnight shift, an armed guard would have been patrolling the drive-through near the pick-up window when the gunmen entered the parking lot.

---

[10] https://www.qsrweb.com/articles/prevent-robbery/
[11] Deposition, Rocco Prate; pp.37
[12] Deposition, Rocco Prate; pp.37
[13] ANSI/ASIS/RIMS RA.1-2015; 5.5.3, pp31-32 *Competence, Evaluation, and Selection of Risk Assessors*

- The activity on the premises prior to the shooting would have prompted an armed security guard to be patrolling the drive-through lane near Plaintiff's vehicle at the time the gunmen entered the back exit from Princeton Avenue.
- I agree with Wendy's Corporate Security Manager Rocco Prate and one of its former General Managers Thelma Mack, that the physical presence of an armed security guard can deter criminal activities[14].
- The physical presence of an armed security guard patrolling the drive-through lane near the pick-up window would have served as a deterrent to the gunmen from approaching and shooting into the Plaintiff's vehicle.
- Mr. Prate testified that the primary purpose of an armed guard was to maintain physical control of the environment at that restaurant[15].

In conclusion, Wendy's was negligent and failed to provide adequate security measures to protect their customers, including Plaintiff and Ms. Mitchell, from a reasonably foreseeable attack. I have concluded that the criminal activity that caused Plaintiff's injuries was reasonably foreseeable to Wendy's.

Wendy's failed to use reasonable care, follow the applicable standards and established security practices to prevent the criminal activity that resulted in Plaintiff's injuries. Furthermore, the burden to use reasonable care and follow the applicable security standards and established practices to prevent the criminal activity would have been minimal for Wendy's. Wendy's failure to use reasonable care and follow the applicable security standards and established practices and was a proximate cause of the injuries suffered by plaintiff.

These opinions are based on my review of the aforementioned materials, accepted standards and practices, as well as to a reasonable degree of professional certainty as a security and law enforcement professional. I reserve the right to amend this report based upon additional material as it becomes available through discovery and/or through any additional work or review of additional work by others.

Respectfully,

*S. R. Hauri*

S. Ronald Hauri, CPP

---

[14] Protection of Assets Manual by ASIS International
[15] Deposition, Rocco Prate; pp.84-85