UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VONZELL SCOTT, SR., <br><br> Plaintiff, <br><br> v. <br><br> WENDY'S PROPERTIES, LLC, <br><br> Defendant. | No. 20 CV 6829 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vonzell Scott, Sr., was shot while sitting in a car at a Wendy's drive-through. He brings this suit alleging that a criminal attack was reasonably foreseeable to defendant Wendy's and that its failure to adequately secure the property was negligent. Wendy's moves for summary judgment. For the reasons discussed below, the motion is granted.

**I. Legal Standards**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

## II. Facts

At around 3:00 a.m. on December 31, 2018, Scott and another passenger pulled up in a car to the Wendy's drive-through on West Garfield Boulevard.[1] [127-1] ¶¶ 14–15.[2] Another car attempted to cut in front of him in the drive-through lane, and he honked his horn in response. [127-1] ¶ 17. That kerfuffle ended, Scott ordered his food, and he waited in the drive-through lane without any problems. [127-1] ¶¶ 19–21. At 3:12 a.m., an SUV stopped in an alleyway adjacent to the parking lot for about thirty seconds before driving across the north side of the parking lot and out of view of the security cameras.[3] [127-1] ¶¶ 26–28; [128] ¶ 60. A few minutes later at 3:15

---

[1] This court has jurisdiction because plaintiff is a citizen of Illinois, defendant is a citizen of Delaware and Ohio, and the amount in controversy is more than $75,000. [3] ¶¶ 7–11; [31] at 2–3; 28 U.S.C. § 1332(a)(1). Illinois law applies. *See Paulsen v. Abbott Laboratories*, 39 F.4th 473, 477 (7th Cir. 2022) (citations omitted) (noting that federal courts sitting in diversity apply the choice of law rules of the forum state, and under Illinois choice-of-law rules, the forum state's law applies unless an actual conflict is shown or the parties agree that forum law doesn't apply).

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiff's response to defendant's Local Rule 56.1 statement, [127-1], and defendant's response to plaintiff's statement of additional material facts, [128], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments. *See, e.g.,* [128] ¶ 62. I do not address immaterial facts. *See, e.g.,* [127-1] ¶¶ 7–13. Where the parties dispute facts and both rely on admissible evidence, I include both sides' versions, understanding that the nonmovant is entitled to favorable inferences.

[3] Plaintiff objects to how defendant characterizes the shooting. *See* [127-1] ¶¶ 27 (description of the shooters' SUV as "wait[ing]" on Scott and the other victim to move up in the drive-through line), 29 (description of shooters taking "military styled stances"). These objections are sustained, and I omit the characterizations as inferences about the mental state of the shooters that lack foundation or are inferences not to be drawn against the nonmovant at summary judgment. In denying plaintiff's motion to bar the testimony of Wendy's expert, Kevin Kavanaugh, I found that Kavanaugh was not barred from using the term "targeted" to describe the shooting as part of his explanation for his opinion on foreseeability and adequacy

2

a.m., two unknown men approached the car from behind (arriving from the vicinity of the SUV), each took one side of the car, shot multiple times into the windows, then immediately fled on foot. [127-1] ¶¶ 22–23, 26, 29. The shooting was over in less than a minute. [127-1] ¶ 30.

At the time of the shooting, Wendy's did not have a security guard on the premises. [128] ¶¶ 53, 55. About 5% of Wendy's restaurants nationwide employ security guards, and less than 2% employ armed security guards. [128] ¶ 56. In the Chicago metropolitan area, approximately 10% of Wendy's locations employ armed security guards. [128] ¶ 57. At the West Garfield location, Wendy's armed security service was scheduled from 9:00 a.m. to 10:30 p.m. [128] ¶ 53. The dining room closed at 10:00 p.m. while the drive-through remained open. [128] ¶ 51. There was no overnight security shift scheduled after 10:30 p.m. [128] ¶ 55.

## III. Analysis

To prove negligence under Illinois law, Scott must establish that the defendant owed him a duty, breached that duty, and his injury was a proximate result of that breach. *See Johnson v. Armstrong*, 2022 IL 127942, ¶ 51. Whether a duty exists is a question of law. *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 215 (1988). Breach and proximate cause are questions of fact for the jury. *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 430 (2006). But "where reasonable minds could not differ as to

---

of security, [116] at 3, but Wendy's does not cite to Kavanaugh's testimony as the basis for its assertions in support of its motion for summary judgment. At summary judgment, the video footage—unless impossible to controvert—is viewed in Scott's favor. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

inferences to be drawn from undisputed facts," the issues become a matter of law and summary judgment is appropriate. *Parsons v. Carbondale Twp.*, 217 Ill.App.3d 637, 646 (5th Dist. 1991).

### A.  Duty

A landowner generally does not owe a duty to protect other people on their property from the criminal acts of third parties unless a special relationship exists between the landowner and the injured person. *Rowe*, 125 Ill.2d at 215–16. Illinois courts recognize four special relationships as creating an affirmative duty to protect another person against the unreasonable risk of physical harm: (1) common carrier and passenger, (2) innkeeper and guest, (3) custodian and ward, and (4) business inviter and invitee. *Marshall*, 222 Ill.2d at 438–39 (citing Restatement (Second) of Torts § 314A (1965)). Scott alleges that he was a business invitee of Wendy's. [127] at 5.

The "touchstone of [the] duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall*, 222 Ill.2d at 436. The existence of a special relationship is not sufficient to impose a duty on the landowner; the criminal attack by a third party must also be reasonably foreseeable. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010). A criminal attack is reasonably foreseeable "when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun." *Id.* "Whether a duty exists is also

4

an inquiry shaped by public policy." *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 22. Four factors inform this inquiry: 1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.*

Wendy's argues that it owed no duty to protect Scott from the shooting because it was not a reasonably foreseeable criminal attack. [120] at 10–16. Wendy's characterizes the shooting as a "targeted military style" attack and analogizes the facts to those in *Witcher v. 1104 Madison St. Restaurant*, 2019 IL App (1st) 181641, ¶ 27, in which the court found that a restaurant had no duty to protect a customer from an unforeseeable "intentional and targeted stabbing" by another patron. The appellate court found no duty as a matter of law because the criminal act at issue "must have resulted from the same risk as was present in the prior incidents of criminal activity," but the restaurant was not put on notice by any similar crimes committed on its premises. *Id.* ¶¶ 15–19. Scott concedes that there is no record of a prior shooting reported at this Wendy's location. [127-1] ¶ 31. Between June 2016 and December 2018, the Chicago Office of Emergency Management recorded twenty-nine calls for service at the West Garfield Wendy's location, but none of the reported incidents involved shootings.[4] [127-1] ¶ 31; [128] ¶ 69. Wendy's says the lack of a

---

[4] Plaintiff asserts that the OEMC recorded twenty-nine calls, which included "criminal activity [such] as batteries, persons with guns, and other disturbances, as well as EMS calls." [128] ¶ 69. Defendant objects to the OEMC calls as inadmissible hearsay. [128] ¶ 69; [129] at 7. The OEMC calls are out-of-court statements offered to prove the truth of the matter asserted—that the calls for service accurately reported crimes or other incidents that took

prior, similar event shows that the shooting was not reasonably foreseeable. [120] at 10–11.

The Illinois Supreme Court rejected a narrow articulation of the relevant risk and emphasized that reasonable foreseeability considers the "general character of the event or harm" rather than the "precise nature or manner of occurrence." *Marshall*, 222 Ill.2d at 442. The court found that the defendant's restaurant owed a duty of reasonable care to protect against a negligent driver crashing her car into the restaurant and killing a patron. *Id.* at 446. It was reasonably foreseeable "given the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents." *Id.* at 442. The court cautioned against conflating duty with breach and proximate cause.

---

place on the Wendy's premises. *See* Fed. R. Evid. 801(c). The call log is admissible under the public-records exception, but the statements in the calls made by third parties pose another level of hearsay that require independent exceptions to be admissible. *See* Fed. R. Evid. 803(8)(A)(ii) ("A record or statement of a public office… if it sets out… a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel."); *see Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (noting that the presumption of reliability underlying the public-records exception does not attach to statements by third parties who themselves have no public duty to report). Without more information about the individual calls made to the OEMC, it is not clear whether statements made in the calls would fall under hearsay exceptions for present-sense impressions or excited utterances. *See* Fed. R. Evid. 803(1), (2); *see United States v. Boyce*, 742 F.3d 792, 798 (7th Cir. 2014) (noting that 911 calls may be admissible as present sense impressions or under the broader exception for excited utterances). Plaintiff's expert, Ronald Hauri, may rely on the OEMC reports when arriving at his opinions, but he cannot testify to the underlying facts for the truth of the matters reported. *See* Fed. R. Evid. 703 (permitting an expert to base an opinion on facts or data that are not admissible if experts in the particular field would reasonably rely on those kinds of facts or data) *and Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D. Ill. 2005) ("[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). The absence of reported shootings, however, does not raise hearsay-within-hearsay concerns.

Recognizing that a duty of reasonable care applies "is not the same as concluding the duty has been breached because a business failed to take a certain level of precaution… [M]erely concluding that the duty applies does not constitute an automatic, broad-based declaration of negligence liability." *Id.* at 443.

It is reasonably foreseeable that customers at Wendy's will occasionally be at risk of criminal assaults by third parties. Wendy's characterization of the harm as a "military styled intentional shooting" or "attempted assassination," is the type of "fact-specific formulation" rejected in *Marshall*. *See* [129] at 5; *Marshall*, 222 Ill.2d at 443. Targeted killings or attempted assassinations are not reasonably foreseeable dangers to the typical quick-service restaurant. But that formulation is too specific. The general nature of harm that Scott faced was an intentional third-party assault—this is not outside the zone of reasonable foreseeability. Wendy's arguments that it does not owe a duty to provide 24-hour security, [120] at 14, goes to the question of breach rather than duty. *See Marshall*, 222 Ill.2d at 443–44 (rejecting framing of the issue as "whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant" but rather "whether in light of the particular circumstances of this case, defendants breached that duty"). Wendy's owed a duty of reasonable care to Scott to protect him against reasonably foreseeably criminal attacks by third parties, but that does not constitute an "automatic, broad-based declaration of negligence liability." *Id.* at 443.

7

B.   **Breach and Proximate Cause**

To prove negligence, Scott must also show that Wendy's breached that duty and that the breach was the proximate cause of his injuries. *See id.* at 430. Scott says that Wendy's breached its duty by failing to provide overnight armed security guards patrolling the drive-through lane near the pick-up window. [127] at 10. Wendy's emphasizes that Scott cannot establish proximate cause because the shooting was an intervening act. [120] at 18; [129] at 12–15.

Proximate cause requires two elements: cause in fact and legal cause. *Lee v. Chicago Transit Auth.*, 152 Ill.2d 432, 455 (1992). Together, cause in fact and legal cause provide the boundary of "how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Id.* In cases involving intervening causes, Illinois courts draw a distinction between a condition and cause, which is just "another way of presenting the cause-in-fact analysis." *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 66. A condition provides an opportunity for causal agencies to act (cause in fact) while legal cause actually produces the injury. *Thompson v. Cnty. of Cook*, 154 Ill.2d 374, 383 (1993); *see also Inman*, 2019 IL App (1st) 172459, ¶ 64. "If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." *Thompson*, 154 Ill.2d at 383.

Legal cause is "is essentially a question of foreseeability" asking whether the "injury is of a type which a reasonable [person] would see as a likely result of his conduct." *Lee,* 152 Ill.2d at 456. Wendy's conduct must be "so closely tied to [Scott's]

8

injury that [it] should be held legally responsible." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 395 (2004). When there is an independent, illegal act by a third party intervening between the defendant's negligent conduct and the plaintiff's injury, "the criminal act is a superseding cause of injury relieving the originally negligent party of liability." *Rowe*, 125 Ill.2d at 224. Relief from liability is not available, however, if the defendant "create[s] a condition conducive to a foreseeable intervening criminal act. If the criminal act is reasonably foreseeable at the time of negligence, the casual chain is not necessarily broken by the intervention of such an act." *Id.* While whether Wendy's furnished a condition that made Scott's injury possible goes to the cause in fact requirement of proximate cause, whether the intervening act of the shooters constitutes a superseding cause that relieves Wendy's of liability goes toward the legal cause requirement. *See Thomas v. Khoury*, 2021 IL 126074, ¶ 5 (In a situation involving a superseding cause, "both the tortious aspect of the defendant's conduct and the superseding cause are causes in fact of the injury, but for reasons of fairness, the defendant's conduct is no longer considered a legal cause, and the defendant is absolved of liability").

Viewing the undisputed facts in Scott's favor, no reasonable jury could find that Wendy's conduct was the proximate cause of Scott's injuries. Here, Wendy's conduct was one of omission. Scott must show that Wendy's decision not to have an overnight security guard on the premises created a condition conducive to the shooters to act (cause in fact) and that it was reasonably foreseeable to Wendy's that its failure to have an overnight armed security guard would result in the shooting

9

(legal cause). According to Scott's expert Ronald Hauri, the physical presence of an armed security guard patrolling the drive-through lane would have deterred the gunmen from approaching and shooting into Scott's vehicle. [128] ¶ 63. This suggests that Wendy's omission was a cause in fact for Scott's injuries. I previously found Hauri's testimony admissible on the issue of cause in fact, but his deterrence opinion is not admissible on the issue of legal cause.[5] *See* [95] at 6–7 ("Hauri can testify about cause in fact—that in his professional experience, the crime wouldn't have occurred had an armed guard been there… But he cannot opine on proximate cause."). There is inherently some measure of uncertainty in considering how an injury could have been avoided if a certain precaution was taken, and Scott argues that this lack of certainty about how the gunmen would have reacted if an armed security guard was present should be resolved by a jury. [127] at 12–13. If a jury accepts Hauri's opinion, it could reasonably find that an armed security guard would have deterred the shooters from approaching and injuring Scott, so Wendy's failure to have a security guard on the night of the shooting furnished the condition for the shooters to act.

But that's not enough. Legal cause considers whether Wendy's reasonably could have anticipated the shooting as a "natural and probable consequence" of its

---

[5] Hauri's opinion on deterrence is in part based on testimony from Security Manager Rocco Prate and former General Manager Thelma Mack that armed security guards deter criminal activities. [90-3] at 7. Prate and Mack may be able to speak from personal knowledge about criminal activity that they witnessed or their perception of criminal activity at Wendy's, but they do not have a foundation to opine on the effectiveness of armed security guards as deterrence to crime. *See* Fed. R. Evid. 701. To the extent that Hauri's opinion relies on inadmissible testimony from Prate and Mack, and Scott is using Hauri's opinion to introduce Prate's and Mack's beliefs about deterrence, defendant's objections, [128] ¶¶ 39, 43, are sustained.

10

conduct. *See First Springfield Bank & Tr. v. Galman*, 188 Ill.2d 252, 257 (1999). Reasonable foreseeability in the context of proximate cause is different from duty. *See Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill.App.3d 32, 41 (2d. Dist. 1997) ("[C]ourts must take care to keep duty and proximate cause analytically independent by differentiating between two distinct problems in negligence theory—the unforeseen plaintiff problem and the problem of the foreseeable injury resulting from unforeseen means.") (internal quotation omitted).

Scott points to statistics of criminal activity at Wendy's, incidents observed by Wendy's employees, and security measures Wendy's had in place at the time of the shooting to suggest that it knew about the risk, so it was reasonably foreseeable. [127] at 6–7. Hauri can opine on what a person or entity in a similar situation should have known, but he cannot opine about what Wendy's knew or didn't know. [95] at 7. Wendy's was aware of the possibility of some criminal activity. Rocco Prate, its Loss Prevention and Security Manager, testified that reports of crime from the CAP Index,[6] the history of reported incidents at a particular location, conversations with local law enforcement, and investigation into security practices of other businesses were all factors that informed Wendy's security decisions. [128] ¶ 42. Nonjae Thompson, a Wendy's manager, testified that she observed suspicious activity from

---

[6] CAP Index is a third-party vendor that provides Wendy's with security assessments. [127-5] at 24:3–17. CAP Index uses the "Crime Cast model" for their assessments. The assessment generates a score of risk in a particular area based on crimes against property and people. *Id.* at 28:1–14. The area covers a range of three to six miles from a restaurant. *Id.* at 28:23–29:4.

11

the drive-through window.[7] [128] ¶ 32. Thompson also told managers that she believed there should be armed security guards on the overnight shift. [128] ¶ 35.

Wendy's knowledge of *some* risk of criminal activity, including neighborhood shootings, does not mean it should have reasonably foreseen *all* incidents of criminal activity at its drive-through. Previous incidents at the location may have put Wendy's on notice of possible criminal activity, but it was not of the sort that reasonably put Wendy's on notice that the shooting in its drive-through would be likely.

The record shows that Wendy's had security measures in place in response to perceived security risks. When Wendy's crew members left the building to clean the parking lot, they were trained to wear headsets in case they were attacked. [128] ¶ 34.[8] Wendy's would occasionally modify the hours of operation at a location based

---

[7] Defendant objects to Thompson's testimony about witnessing these alleged events as unsupported because it is speculative and does not provide accurate details for where the incidents occurred. [128] ¶ 32. Thompson testified that, "You could see shootings. You could see people getting into different type of altercations. You could see carjackings, yes. You can see all that." [127-3] at 65:2–5. Thompson's testimony of what she observed is admissible because it is within the scope of her personal knowledge. *See* Fed. R. Evid. 602. But her testimony about shootings and carjackings was no more specific than something she could see within her view, which included a main road and a gas station across the street; although she accepted the premise of a question that some suspicious and criminal activity occurred on Wendy's premises, she did not testify to observing a shooting at the drive-through. Defendant also objects to Thompson's assertion that the neighborhood is "very dangerous" as speculative, immaterial, lacking evidentiary support, and providing inadmissible testimony from a lay witness. [120] ¶ 33. Thompson's perception of the neighborhood as dangerous is admissible under Rule 602, as is her testimony that she saw a shootout in the neighborhood at some unspecified time before Scott's shooting. But the record does not contain a foundation for Thompson to provide a crime rate. Thompson's testimony, like Thelma Mack's discussed below, establishes a general risk sufficient to raise a dispute about Wendy's duty, but it does not suggest that preventing shootings in the drive-through was something Wendy's would anticipate as a consequence of its failure to post an armed guard there.

[8] Defendant objects to the assertion as inadmissible, speculative, immaterial, lacking evidentiary support, and offering inadmissible opinion from a lay witness. [128] ¶ 35. The objection is overruled because Mack's testimony is based on her personal knowledge of the

on security assessments if it was deemed a "high risk location." [128] ¶ 51. Wendy's accounted for this risk by closing the dining room at 10:00 p.m. and keeping only the drive-through open. [128] ¶ 51. Wendy's also previously adjusted the start of the security shift from 12:30 p.m. to 9:00 a.m. because of "homeless people" and "vagrants" coming into the restaurant during early morning hours. [128] ¶¶ 54–55. These facts suggest that Wendy's understood there was some level of risk associated with conducting business at this location, but it does not show that the shooting was reasonably foreseeable to them at the time. Knowledge about the risks in a dining room during late night hours, for example, does not mean Wendy's should have reasonably foreseen a shooting outside, after the dining room was closed. *Cf. Libolt v. Wiener Circle, Inc.*, 2016 IL App (1st) 150118, ¶ 38 (finding room for reasonable differences in judgment on proximate cause where the record showed the restaurant had a practice of encouraging staff to yell at customers, it was 2 a.m. in the morning, the dining room was busy, and the "majority" of patrons were intoxicated). Wendy's is a quick-service restaurant—it is not a bar or full-service restaurant that serves alcohol. The dining room was closed when the shooting occurred—customers were

---

procedure from her experience as a shift manager. *See* [127-4] at 20:20 ("Q. Okay. Why were you to wear a headset when you were cleaning outside the restaurant? A. If something is going on out there for him to talk through the headset on the inside to let them know. Q. What kind of thing would they report if they were wearing a headset in case they got attacked they could report that to somebody inside and somebody inside could hit the panic alarm, correct? A. No. Panic alarm was not for that. Q. Okay. But the person would wear -- one of the reasons they would wear a headset is in case they got attacked they could call to someone inside the restaurant, correct? A. Yes."). But there is no admissible evidence that headsets successfully prevented any attacks; nor is there evidence of a successful attack on a customer in the drive-through. Mack's testimony does not tend to show that Scott's shooting was foreseeable.

waiting in their cars in the drive-through. Moreover, there was no altercation between Scott and the gunmen leading up to the shooting.[9] Under these circumstances, Wendy's could not have reasonably anticipated the shooting to be a "natural and probable cause" of its failure to have armed guards posted outside. *See Galman*, 188 Ill.2d at 257; *see also Lutz v. Goodlife Ent., Inc.*, 208 Ill.App.3d 565, 570 (1st Dist. 1990) (finding that even if a club was negligent in allowing a dance floor to become overcrowded, the criminal attack by a third party on plaintiff in response to a "casual bump on a crowded dance floor" would not put a reasonable person on notice that a "spontaneous and violent attack" would follow).

Even if Wendy's decision not to staff overnight security guards was negligent, no reasonable jury could find the breach to be the proximate cause of Scott's injuries. Hauri's testimony, along with the testimony from Wendy's personnel, sets the stage for negligent conditions at the drive-through but does not allow a jury to conclude that the absence of an armed guard legally caused the shooting. Scott's suffering is

---

[9] Scott argues that there was prior suspicious activity as well as a "road rage" incident between Scott and another customer that a trained security guard would have responded to. [127] at 11. The suspicious activity refers to an incident about 12-15 minutes before the shooting where people entered and exited a vehicle waiting in the drive-through. [128] ¶¶ 58–59. The "road rage incident" refers to the interaction between Scott and another customer who attempted to cut Scott in the drive-through line. [128] ¶¶ 40, 67. Scott says that a properly trained security guard would have responded to these incidents by staying in the drive-through area until Scott left the premises. [128] ¶¶ 40, 67; [127] at 11. Wendy's objection is overruled, but the evidence does not advance Scott's theory. These customers are not alleged to have any connection with the two gunmen, so those events did not put Wendy's on notice of a brewing altercation. They are merely events of the kind Wendy's knew were likely and did not require armed security to prevent any injuries. Customers entering and exiting a car waiting in the drive-through or tension between two customers in line does not make the subsequent shooting reasonably foreseeable such that Wendy's failure to intervene earlier was the proximate cause of the shooting.

tragic, but the shooting constituted an intervening criminal act that was not reasonably foreseeable to Wendy's, the causal chain was broken, and Wendy's is not liable for Scott's injuries.

## IV. Conclusion

Defendant's motion for summary judgment, [119], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date: April 24, 2024